IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CLINTON FORD                    :
                                :
    v.                          :  Civil Action No. DKC 10-0137
                                :
FRANCIS P. CHIARAMONTE, et al.  :
                                :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this employment discrimination action is a motion to dismiss filed by Defendant Francis P. Chiaramonte. (Paper 5). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Defendant's motion will be denied.

**I. Background**

   **A. Factual Background**

The following facts are alleged in Plaintiff's amended complaint. (Paper 11). On May 11, 2005, Plaintiff Clinton Ford, an African-American male over the age of forty, commenced at-will employment with Southern Maryland Hospital as Director of Environmental Services. At some point in 2007, Defendant Francis P. Chiaramonte ("Dr. Chiaramonte"), the President and principal shareholder of Defendant Southern Maryland Hospital, Inc. ("SMH"), complained to Plaintiff about a piece of trash he

observed on the floor of a bathroom, stating that it was "not until we started hiring all these blacks that the place started going down."  (Paper 11, ¶ 17).  Plaintiff reported this incident to SMH Chief Financial Officer Chuck Stewart and Vice President of Human Resources Paul Zeller, but neither took corrective action.  Shortly thereafter, at an SMH board meeting, Dr. Chiaramonte directed Andre Clay, a recruiter, to stop "hiring blacks," and when Mr. Clay balked, Dr. Chiaramonte told him "not to go 'afro-centric on him.'"  (*Id*. at ¶ 19).  Mr. Clay was subsequently fired at the behest of Dr. Chiaramonte.

In December 2007, Plaintiff was ordered to reduce his staff by ten full-time employees in order to save on payroll costs. Despite this shortage of manpower, he excelled at his job.  In July 2008, Plaintiff received a ten thousand dollar annual salary increase related to his exemplary work in preparing the hospital for state inspections.  On March 6, 2009, he received a performance review praising him as "an outstanding employee" who "consistently raises the bar on any standard that has been set." (*Id*. at ¶ 22).

Also in March 2009, Plaintiff advocated on behalf of Gloria Estrada, a subordinate employee he believed was being treated unfairly by Dr. Chiaramonte.  Shortly thereafter, Dr. Chiaramonte directed Plaintiff to stop wearing a suit and tie to work and to "get on his hands and knees and clean the hospital."

(*Id*. at ¶ 24). On or about March 12, 2009, Plaintiff was among a group of employees, including Ms. Estrada, called to a meeting with Dr. Chiaramonte. At that meeting, Plaintiff was informed that he had been demoted, albeit without a reduction in salary. According to Plaintiff, Dr. Chiaramonte asked the employees at the meeting to consider whether they wished to continue working at the hospital, adding "I will not take your money, because you people like to sue and go to [the] EEOC with that minority crap." (*Id*. at ¶ 25). At the same meeting, Dr. Chiaramonte inquired as to Ms. Estrada's national origin and made a derogatory gesture toward a photograph of President Obama.

Plaintiff's former position as Director of Environmental Services was promptly filled by Christopher Olup, a younger, less-experienced Caucasian male. At around the same time Mr. Olup was hired, Dr. Chiaramonte approved the hiring of ten full-time employees to serve under him. Mr. Olup was subsequently provided two additional management personnel to assist him. Plaintiff registered a number of complaints about these circumstances with SMH management – including at a March 16, 2009, meeting with Mr. Zeller – but no action was taken. On or about April 2, 2009, Mr. Stewart approached Plaintiff and asked if he had filed an EEO complaint, citing "rumors" that he had. (*Id*. at ¶ 29). Plaintiff advised that he had not filed a

complaint, but again raised his concerns with Mr. Stewart and requested that they be addressed. Still, no action was taken.

On or about April 22, 2009, Dr. Chiaramonte and SMH received notice that Ms. Estrada had filed a complaint with the EEOC. On the same date, Plaintiff was notified by a memorandum backdated to April 8, 2009, that his annual salary had been reduced by ten thousand dollars effective as of March 22, 2009. In response, Plaintiff sent two letters of complaint directly to Dr. Chiaramonte, providing copies to SMH and human resources personnel, but received no response. On or about April 27, 2009, Mr. Zeller learned that Plaintiff was a witness in the EEOC's investigation of Ms. Estrada's complaint. On May 22, 2009, Plaintiff was fired by Dr. Chiaramonte, who explained that SMH "needs some new directions." (*Id*. at ¶ 35).

**B. Procedural Background**

On June 5, 2009, Plaintiff filed an EEO complaint against SMH alleging discrimination on the basis of race and age.[1] On January 20, 2010, following the issuance of a right to sue letter, he commenced this action against SMH and Dr. Chiaramonte, in his individual capacity and as president and sole shareholder of SMH, alleging racial discrimination and

---

[1] Defendant purports to have attached the EEO complaint as an exhibit to his motion to dismiss, but the exhibit was not filed with the court. Plaintiff concedes that Dr. Chiaramonte was not specifically named as a respondent in that complaint.

4

retaliation in violation of Title VII of the Civil Rights Act of 1964 (Count I) and 42 U.S.C. § 1981 (Count II), age discrimination in violation of the Age Discrimination in Employment Act (Count III), violation Article 49B of the Maryland Code (Count IV), and violation of the Maryland Wage Payment and Collection Act (Count V). (Paper 1).

SMH answered the complaint on February 9, 2010. (Paper 4). On the same date, Dr. Chiaramonte filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6), contending that Plaintiff had failed to exhaust his administrative remedies as to Counts I, III, and IV, and that he had failed to state a claim as to Counts I, II, III, and V. (Paper 5). In response, Plaintiff conceded that Counts I, III, and V of the complaint could not be sustained as to Dr. Chiaramonte, but argued that his complaint set forth a basis for liability as to Count II, the § 1981 claim, and that he had properly exhausted his claim as to Count IV, alleging violation of Article 49B. (Paper 7).

Upon obtaining leave of the court, Plaintiff filed an amended complaint on March 24, 2010, omitting Dr. Chiaramonte from Counts I, III, and V, and amending Count IV to reflect that, in 2009, the relevant provisions of Article 49B were repealed and replaced by substantively similar provisions in the State Government Article, *see* H.B. 51, 2009 Gen. Assem. Sess. (Md. 2009). (Paper 11). On March 30, 2010, SMH filed an answer

to the amended complaint (paper 12), and Dr. Chiaramonte filed a motion requesting the court to consider his prior motion to dismiss as addressing Plaintiff's amended complaint (paper 13). Plaintiff does not oppose that motion, and it will be granted.[2]

**II. Analysis**

In applying Defendant's dismissal motion to the allegations asserted in Plaintiff's amended complaint, two issues are presented: (1) whether the amended complaint states a claim for individual liability under § 1981 (Count II), and (2) whether Plaintiff exhausted his administrative remedies with respect to his claim under the State Government Article (Count IV).

The purpose of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."

---

[2] *See* 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1476 (2d ed. 1990) ("If some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion [to dismiss] as being addressed to the amended pleading. To hold otherwise would be to exalt form over substance.") (footnote omitted).

Fed.R.Civ.P. 8(a)(2). Nevertheless, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n. 3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, 1949 (2009) (internal citations omitted).

In its determination, the court must consider all well-pled allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). The court need not, however, accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Iqbal*, 129 S.Ct. at 1950, or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). *See also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] . . . that the

pleader is entitled to relief.'" *Iqbal*, 129 S.Ct. at 1950 (quoting Fed. R.Civ.P. 8(a)(2)). Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

### A. Count II – § 1981

Defendant argues that the amended complaint does not allege facts sufficient to establish individual liability for Dr. Chiaramonte under § 1981, because it is comprised exclusively of "(1) allegations that do not demonstrate intentional discrimination by Dr. Chiaramonte; (2) legal conclusions couched as factual allegations; and (3) legally void allegations." (Paper 9, at 4). Thus, according to Defendant, Count II must be dismissed for failure to state a claim.

Section 1981 provides, in pertinent part, that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens[.]" 42 U.S.C. § 1981(a). The statute broadly defines the term "make and enforce contracts" as "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). Thus, a cause of action under § 1981 "must be founded on purposeful, racially

discriminatory actions that affect at least one of the contractual aspects listed in § 1981(b)." *Spriggs v. Diamond Auto Glass*, 165 F.3d 1015, 1018 (4th Cir. 1999). It is well settled in this circuit that at-will employment relationships, such as that at issue here, are contractual in nature and "may therefore serve as predicate contracts for § 1981 claims." *Spriggs*, 165 F.3d at 1019.

Corporate officers or directors may be held personally liable only if they "'intentionally cause a corporation to infringe the rights secured by' section 1981." *Carson v. Giant Food, Inc.*, 187 F.Supp.2d 462, 483 (D.Md. 2002) (quoting *Tillman v. Wheaton-Haven Recreation Ass'n, Inc.*, 517 F.2d 1141, 1145 (4th Cir. 1975)). Stated differently, "[i]ndividuals may be liable under Section 1981 when they 'authorize, direct, or participate in' a discriminatory act." *Atkins v. Winchester Homes*, Civ. No. CCB-06-278, 2007 WL 269083, at *9 (D.Md. Jan. 17, 2007) (quoting *Manuel v. Int'l Harvester Co.*, 502 F.Supp. 45, 50 (N.D.Ill. 1980)).

"Although a plaintiff is not required to plead a prima facie case of discrimination in order to survive a Rule 12(b)(6) motion to dismiss, he nonetheless must plead facts sufficient to state each element of the asserted claim." *Luy v. Baltimore Police Dep't*, 326 F.Supp.2d 682, 688-89 (D.Md. 2004) (internal citations omitted). The elements of a *prima facie* case for

discrimination are the same under § 1981 and Title VII. *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 n. 1 (4th Cir. 2004). Plaintiff must allege that "(1) he is a member of a protected class; (2) his job performance was satisfactory; (3) he suffered an adverse employment action; and (4) similarly situated employees outside his protected class were treated more favorably." *Luy*, 326 F.Supp.2d at 688 (citing *Frank v. England*, 313 F.Supp.2d 532, 538 (D.Md. 2004)). Plaintiff must also allege that "he was terminated or otherwise treated less favorably 'because of' his race," *id.*, and that Dr. Chiaramonte "authorize[d], direct[ed], or participate[d] in" such discriminatory acts, *Atkins*, 2007 WL 269083, at *9 (internal marks omitted).

Considering all well-pled allegations as true and construing all facts in the light most favorable to Plaintiff, as the court must in considering a motion to dismiss, the amended complaint clearly states a claim for individual liability of Dr. Chiaramonte under § 1981. Each of the elements of the *prima facie* analysis has been alleged. As an African-American, Plaintiff is a member of a protected class, and his job performance was more than satisfactory; indeed, he received a sizeable raise and a glowing performance review in the months prior to his termination. Moreover, Plaintiff's demotion and termination both constitute adverse employment actions, and he

10

has alleged that at least one employee outside his protected class was treated more favorably, *i.e.*, Mr. Olup, a less-experienced Caucasian male who was provided significantly more resources to do the same job Plaintiff had previously done.

The complaint further alleges that Plaintiff was "demoted and then terminated by [Dr.] Chiaramonte . . . due to his race" (paper 11, ¶ 54), and sets forth specific facts in support of that claim. In the very same meeting in which Dr. Chiaramonte advised Plaintiff that he was being demoted, he told the group of employees called to the meeting that he would not reduce their salary because "you people like to sue and go to [the] EEOC with that minority crap" (paper 11, ¶ 25); he specifically inquired as to the national origin of Ms. Estrada; and he made a derogatory gesture toward a photograph of President Obama, the country's first non-Caucasian president. Considering his prior comment to Plaintiff that conditions at the hospital deteriorated when the hospital "started hiring all these blacks" (*id*. at ¶ 17), and his subsequent directive to Mr. Clay to discontinue that practice (*id*. at ¶ 19), racial animus may be inferred as a motivating factor for the adverse employment actions.

Finally, insofar as Dr. Chiaramonte is alleged to be the primary actor in virtually all of the relevant conduct, it is clear that the complaint sets forth a claim for individual

11

liability under § 1981. In arguing otherwise, Defendant does nothing more than point to cases in which sufficient facts were not alleged in support of individual liability. *See Luy*, 326 F.Supp.2d at 688 ("Luy's complaint is devoid of any allegations naming [the individual defendant], and thus fails to state any basis for imposing individual liability on him under § 1981."); *Carson*, 187 F.Supp.2d at 483 (granting a motion for summary judgment where there was "no evidence that any of the individual defendants directed, participated in or even approved of intentional discrimination"). Here, by contrast, Plaintiff alleges that Dr. Chiaramonte made the decision to demote him, to replace him with Mr. Olup, and to terminate his employment. Thus, Plaintiff has stated a claim of discrimination on the basis of race against Dr. Chiaramonte under § 1981.

The complaint similarly alleges sufficient facts in support of a retaliation claim against the individual defendant. To state a *prima facie* claim for retaliation, Plaintiff must allege that (1) he engaged in a protected activity, (2) Dr. Chiaramonte took adverse employment action against him, and (3) a causal connection existed between the protected activity and the adverse action. *See Hopkins v. Baltimore Gas & Electric Co.*, 77 F.3d 745, 754 (4th Cir.), *cert. denied*, 519 U.S. 818 (1996). According to the complaint, shortly after Plaintiff expressed support of his colleague, Ms. Estrada, in her dispute with Dr.

Chiaramonte, he was demoted without a reduction in pay. At the meeting where that decision was discussed, Dr. Chiaramonte specifically referenced potential EEO activity as a consideration in not reducing salary. On April 22, 2009, however – the same date that Ms. Estrada filed her EEO complaint – Plaintiff received notice that his salary had been reduced and that this reduction was effective as of March 22, 2009. Moreover, less than a month after he participated in the EEOC's investigation of Ms. Estrada's complaint, Plaintiff was fired by Dr. Chiaramonte. At the very least, it may be inferred from these facts that there was a causal relationship between Plaintiff's termination – the quintessential adverse employment action – and his participation in Ms. Estrada's EEO investigation, a protected activity. Particularly at this nascent stage of the litigation, the "temporal proximity" of the two events alone is sufficient to establish a causal nexus. *See Carter v. Ball*, 33 F.3d 450, 460 (4th Cir. 1994).

Insofar as the complaint alleges that Plaintiff's demotion and termination were effected by Dr. Chiaramonte with discriminatory and/or retaliatory intent, it states a claim for individual liability under § 1981. Accordingly, Defendant's motion to dismiss Count II will be denied.

### B. Count IV – § 2-222 of the Prince George's County Code

Count IV purports to bring an action against SMH and Dr. Chiaramonte for violation of § 2-222 of the Prince George's County Code, through § 20-1202 of the State Government Article of the Annotated Code of Maryland. The amended complaint alleges that both SMH and Dr. Chiaramonte are "employers" pursuant to Md. Ann. Code, State Government § 20-601. Count IV is, essentially, the state law analogue to Count I, the Title VII claim, *see Haas v. Lockheed Martin Corp.*, 396 Md. 469, 483 n. 8 (2007), but although Plaintiff amended his complaint to remove Dr. Chiaramonte from Count I, he failed to remove him from Count IV. Defendant, however, did not contend in his motion to dismiss that Plaintiff had failed to state a claim as to Count IV because individuals may not be sued. That argument was made for the first time in his reply brief – and even then only obliquely. (Paper 9, at 2 n. 1).

The general rule in federal courts is that an argument raised for the first time in a reply brief will not be considered. *Clawson v. FedEx Ground Package Sys.*, 451 F.Supp.2d 731, 734 (D.Md. 2006); *see also United States v. Williams*, 445 F.3d 724, 736 n. 6 (4th Cir. 2006). The rule stems from a concern that such arguments would prejudice the opposing party because it would not have an opportunity to respond. Thus, the court will not consider at this time whether Plaintiff may bring

an action against Dr. Chiaramonte in his individual capacity under the state law claim.

The only argument pressed by Defendant as to this count is based on the failure to name Dr. Chiaramonte separately as a respondent in the EEO complaint. As recognized by Judge Davis in *Scannell v. Bel Air Police Dep't*, 968 F.Supp. 1059, 1067 (D.Md. 1997), individuals who are not named in the administrative complaint may nevertheless be sued, particularly in their "official" capacity, if "they are substantially identified with the defendant organization" that is named or if they are within the scope of a reasonable investigation. Plaintiff has sued Dr. Chiaramonte both individually and as "president and sole shareholder" of SMH. (Paper 11, ¶ 9). As noted above, much, if not all, of the conduct complained of would entail investigation of Dr. Chiaramonte's personal actions. At this stage, then, the claims against him personally in count IV will not be dismissed.

## III. Conclusion

For the foregoing reasons, Defendant's motion to consider his prior motion to dismiss as addressing Plaintiff's amended complaint will be granted and his motion to dismiss will be denied. A separate order will follow.

```
            _____/s/_____
            DEBORAH K. CHASANOW
            United States District Judge
```